THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
HOUSTON CASUALTY COMPANY, as assignee and
subrogee of Policygenius, Inc.

        Plaintiff,

  -against-

JONATHAN LE,

        Defendant.
---------------------------------------------------------------------X

Civil Action No.:

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff HOUSTON CASUALTY COMPANY, as assignee and subrogee of Policygenius, Inc., files this Complaint against the above-named Defendant, and respectfully alleges as follows:

## PARTIES AND BACKGROUND

1. Plaintiff HOUSTON CASUALTY COMPANY ("Plaintiff" or "HCC") was at all relevant times and still is an insurance company organized and existing under the laws of the State of Texas and maintains its principal place of business located at 13403 Northwest Freeway, Houston, Texas 77040.

2. Upon information and belief, Defendant JONATHAN LE ("Defendant" or "LE") was at all relevant times and still is a resident of the State of New York, and maintains a residence located at 107 St. Marks, Apartment 2E, New York, New York 10009.

3. HCC issued a Crime Protection Policy No. 14-MG-21-A15074 covering its assignor and subrogor, Policygenius, Inc. ("Policygenius"), for all losses resulting from the dishonest acts by its employee, LE, whether acting alone or in collusion with others. The Policy issued by HCC was in full force and effect at the time Policygenius, its insured, sustained losses from the dishonest acts committed by its employee, LE.

4. Policygenius submitted a claim to HCC under the Policy for the dishonest and

fraudulent acts committed by its employee, LE, which directly caused Policygenius to sustain losses in at least the sum of $478,654.74.

5.  HCC paid its insured Policygenius under the Policy for its losses in the sum of $453,654.74, net the Policy's $25,000 deductible, resulting directly from the dishonest and fraudulent acts of Policygenius's now former employee, LE.

6.  In consideration of its payment for the loss, HCC has been assigned and subrogated to all right, title and interest in and to any and all claims, causes of action or any rights that Policygenius has or had arising out of, or connected with, the fraudulent conduct set forth herein, including the right of first recovery to amounts owed by any third parties, until HCC is fully reimbursed for its payment to Policygenius in the amount of $453,654.74, plus interest, and together with all available costs, fees and disbursements.

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000 and Plaintiff HCC is a citizen of the State of Texas and Defendant LE is citizen of the State of New York.

8.  Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to HCC's action occurred in this judicial district.

## GENERAL ALLEGATIONS

7.  LE was employed by Policygenius, an insurance broker that operates an online insurance marketplace, at its New York, New York headquarters from May 13, 2019, until his employment was terminated on or about July 13, 2021.

8.  At all relevant times, LE was the Senior Manager of Technical Operations/IT at Policygenius, and was responsible for supervising the Technical Operations/IT team and had authority to order and purchase computer equipment, including laptop computers for

Policygenius's "start" classes for new hires that occurred every 2 weeks. LE was not responsible for configuring the company's computer equipment or the delivery of computer equipment to the end users.

9. Between at least August 23, 2019 to June 21, 2021, LE perpetrated a fraudulent scheme whereby he ordered and purchased laptop computers which he knew had no legitimate business purpose, used a corporate credit card or credit cards issued by Policygenius to pay for the purchases, and then stole the laptop computers.

10. The majority of the laptop purchases occurred after the start of the Covid-19 pandemic when LE and Policygenius's employees started working from home.

11. To avoid detection, LE misrepresented, falsified, and concealed the purpose of the purchases in Policygenius's books and records by making them appear to be purchases for a "start" class of new hires.

12. On or about July 13, 2021, Policygenius terminated LE for unrelated performance issues.

13. As the Senior Manager of Technical Operations/IT, LE used his position of authority and trust to order and cause Policygenius to pay for laptop computers and equipment totaling the sum of at least $478,654.74, although he knew such computers and equipment would not be used by Policygenius or its employees.

14. To date, HCC has not recovered any monies in connection with LE's fraudulent scheme.

**COUNT I**
**(Conversion)**

15. HCC realleges and incorporates by reference the allegations at paragraphs 1-14 above as if fully set forth herein.

16. LE wrongfully and intentionally converted and appropriated to himself and for his own benefit the money and property of Policygenius.

17. Such conversion was wrongful and inconsistent with Policygenius's rights of ownership and possession thereto.

18. As a direct and proximate result of LE's acts of conversion, Policygenius suffered damages in the amount of at least $478,654.74, which claim has been assigned and subrogated to HCC to the extent of its payment to Policygenius as set forth above.

## COUNT II
### (Fraud)

19. HCC realleges and incorporates by reference the allegations at paragraphs 1-18 above as if fully set forth herein.

20. Between at least from August 23, 2019 to June 21, 2021, LE, who was in a position of trust and confidence and charged with a fiduciary duty, perpetrated a fraudulent scheme whereby he wrongfully and intentionally converted and appropriated to himself and for his own benefit the money and property of Policygenius.

21. Without the knowledge of, consent by or authorization from Policygenius, LE conducted the fraudulent scheme by abusing his authority and access to Policygenius's corporate credit cards and his authority to purchase computer equipment that would benefit LE, and then diverting the laptop computers and equipment for his own personal benefit.

22. To avoid detection, LE misrepresented, falsified, and concealed the purpose of the laptop purchases in Policygenius's books and records by describing them as purchases for a "start" class of new hires or did not enter the purchased laptop computers in Policygenius's systems.

23. Policygenius reasonably relied on the honesty and integrity of LE and of the books and records wherein he described the purchases as for a "start" class of new hires. Had

Policygenius known the truth that the purchases were not for laptop computers or equipment that Policygenius needed or received, it never would have continued to allow LE to make computer equipment purchases.

24. As a result of the foregoing acts, Policygenius suffered damages in the amount of $478,654.74, and such other amounts to be proven at trial including pre-judgment and post-judgment interest as permitted by law. As set forth above HCC has been assigned and subrogated to Policygenius's claims to the extent of its payment to Policygenius as set forth above.

## COUNT III
### (Unjust Enrichment and Constructive Trust)

25. HCC realleges and incorporates by reference the allegations at paragraphs 1-24 above as if fully set forth herein.

26. Between at least from August 23, 2019 to June 21, 2021, LE perpetrated a fraudulent scheme whereby he misappropriated Policygenius's funds and property.

27. As a result of LE's fraudulent scheme, LE was unjustly enriched in the amount of at least $478,654.74. A constructive trust should be imposed as to these funds and the property acquired thereby, at least to the extent of HCC's payment to Policygenius in the sum of $453,654.74.

## COUNT IV
### (Money Had and Received)

28. HCC realleges and incorporates by reference the allegations at paragraphs 1-27 above as if fully set forth herein.

29. LE became indebted to Policygenius for money and property wrongfully had and received by him which rightfully belonged to Policygenius.

30. At least of $453,654.74 is the reasonable value of the amount due and payable to

HCC, as the assignee and subrogee of Policygenius's claims, plus pre-judgment and post-judgment interest as permitted by law.

## COUNT V
### (Equitable Subrogation)

31. HCC realleges and incorporates by reference the allegations at paragraphs 1-30 above as if fully set forth herein.

32. HCC's insured, Policygenius, suffered a loss which LE caused through his acts of theft, embezzlement, conversion, fraud, and misappropriation.

33. HCC compensated Policygenius in the amount of $453,654.74 for the loss for which LE is liable due to his acts of theft, embezzlement, conversion, fraud, and misappropriation.

34. HCC is therefore equitably subrogated to any and all rights Policygenius has to the $453,654.74 paid by HCC to Policygenius under the terms of the Policy and under New York law.

35. As a direct and proximate result of LE's acts of theft, embezzlement, conversion, fraud and misappropriation, Policygenius suffered damages in the amount of $453,654.74. By virtue of Policygenius's assignment and principals of equitable subrogation, HCC is entitled to assert all rights of Policygenius, to the extent of its payment to Policygenius, arising from the acts sued upon herein.

## DEMAND FOR A TRIAL BY JURY

36. Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a jury trial on all issues so triable of right by a jury.

**WHEREFORE**, Plaintiff Houston Casualty Company, as assignee and/or subrogee of Policygenius, Inc., respectfully asks this Court to enter judgment in favor of Plaintiff and award Plaintiff the following relief against Defendant on all counts or causes of action against Defendant,

as follows:

    a.    All monetary damages of at least $453,654.74;

    c.    For a constructive trust on LE's money and assets, including any and all bank accounts and real or personal property belonging to him;

    d.    All out-of-pocket claim and recovery expenses in an amount to be proven at trial;

    e.    Pre-judgment and post-judgment interest as permitted by law;

    f.    Costs of suit; and

    g.    Such other and further relief as the Court deems proper.

Signed this 25th day of January, 2023

        HOUSTON CASUALTY COMPANY, as assignee and subrogee of Policygenius, Inc.

By: *S/ Christie M. Bird*
Christie M. Bird
Frenkel Lambert Weiss Weisman & Gordon, LLP
80 Gibson Street
Bay Shore, New York 11706
Tel.: (212) 344-3100 (Main)
Tel: (929) 506-6735 (Direct)
cbird@flwlaw.com
Bar #CB7383

*Counsel for Houston Casualty Company*